■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN HARRIS, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered June 9, 1975, convicting him of attempted murder of a peace officer, robbery in the first degree and possession of a deadly weapon, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and new trial ordered. Defendant stands convicted of the crime of attempted murder of a peace officer, committed during the course of an aborted robbery at a Transit Authority token booth on May 13, 1974. The officer, a Transit Authority policeman working in plainclothes, entered upon the scene while the robbery was still in progress, and allegedly announced his status in attempting to effect an arrest. The defendant at this juncture, according to police testimony, turned and attempted to fire on the officer, but his 'gun would not function. He was thereafter arrested and brought to trial. Despite the presence of evidence in the case that the officer had identified himself as such prior to the defendant's attempt to kill him, the Trial Justice refused to instruct the jury that in order to convict the defendant of attempted murder as charged in the indictment (as amended at trial), the People had to prove beyond a reasonable doubt that the defendant knew or had reason to know that his intended victim was a peace officer at the time that he attempted to kill him (cf. Penal Law, § 125.27, subd 1, par

[a], cl [i]). Defense counsel excepted to the court's refusal, thus preserving the issue for appellate review. At the time in question, section 110.05 of the Penal Law provided, *inter alia:* "An attempt to commit a crime is a: 1. Class A-I felony when the crime attempted is the A-I felonies *[sic]* of murder of a peace officer in the course of performing his official duties, criminal possession of a controlled substance in the first degree or criminal sale of a controlled substance in the first degree". On this appeal the defendant contends that (1) the above statute fails to define a crime, as there can be no "attempt" to murder a "peace officer" where there is no separate substantive crime of "murder of a peace officer" (Penal Law, former § 125.25 [as amd by L 1973, ch 276, § 13] distinguished between the murder of a private citizen and that of a peace officer killed in the line of duty only as to sentence, with the death penalty being a possibility only in the latter instance [Penal Law, former § 125.30]), and (2) the refusal to charge as requested constituted reversible error or, in the alternative, if the statute be construed so as to eliminate the requirement of *scienter* (i.e., that the defendant know or have reason to know the status of his intended victim), then the statute itself is unconstitutional as violative of due process. Having sent for and examined the legislative "bill jacket" accompanying chapter 112 of the Laws of 1970 (which first amended section 110.05 of the Penal Law to make the attempted murder of a peace officer in the course of performing his official duties a class A [now A-I] felony), we have come to the conclusion that the intent of the Legislature in enacting this provision was to increase the penalty for the attempted murder of a peace officer in the line of duty in an effort to parallel the two-tiered approach to sentencing incorporated in sections 125.25 and 125.30 of the Penal Law as they then read*, and that, while the method employed here may have been less clear or desirable than that employed in the "murder" statute, it was nevertheless, not impermissible. We are not aware of any authority which would preclude the Legislature from creating a separate crime of "attempted murder of a peace officer," as a special subclassification of "attempted murder," merely because there is no parallel "murder" statute affecting persons of the same status. Stated differently, we know of no reason why the Legislature could not validly choose to subdivide the inchoate crime of attempted murder into two rational subclassifications dependent upon the status of the intended victim and to specify a different penalty as to each (cf. Penal Law, § 110.05, subd 1, as amd by L 1974, ch 367, § 3). On the contrary, "The cardinal rule in interpreting penal statutes is to give effect to the intention of the legislative body which enacted them, and such intention is determined from the language used, giving to the words their ordinary meaning * * * Accordingly, the clear intention of the Legislature is not to be defeated through interpretation, nor may the literal meaning of words defeat the manifest intent of a statute * * * construction must follow the clear intent of the Legislature, and penal statutes must be construed to effect that intent" (McKinney's Cons Laws of NY, Book 1, Statutes, § 272, p 440; cf. Penal Law, § 5.00 ["Penal law not strictly construed"]). In short, we do not agree that subdivision 1 of section 110.05 of the Penal Law fails to define a crime (cf. *People v Hassin,* 48 AD2d 705; *People v Falu,* 37 AD2d 1025). Turning to a consideration of the second issue presented, we believe that the refusal to charge as requested mandates reversal and a new trial. An examination of the afore-mentioned "bill jacket" and a comparison of it

---

* The attempted murder of any individual was previously classified as a class B felony (see Penal Law, § 110.05, subd 1, as enacted by L 1965, ch 1030).

with the "bill jacket" accompanying chapter 367 of the Laws of 1974 (the source of section 125.27 of the Penal Law ["Murder in the first degree"]) has led us to conclude that the evil sought to be cured by the adoption of chapter 112 of the Laws of 1970 was the then-current spate of assassination attempts against *uniformed* officers acting in the line of duty, and that the aim of the Legislature in passing the amendment was to provide these officers with an extra measure of public support and protection by increasing the penalty for such attempts to conform with the increased penalty available for the consummated murder of a peace officer killed in the course of performing his official duties, pursuant to former section 125.30 of the Penal Law (possible sentence of death). The deterrent purpose of such a law would not be served by construing subdivision 1 of section 110.05 as a strict liability statute (cf. Penal Law, § 125.25, subd 3 [felony murder]). It would only be served by requiring that the defendant possess *scienter* (i.e., know or have reason to know that his intended victim is a peace officer acting in the line of duty), before he may be validly convicted thereunder. Moreover, the requirement that the defendant possess *scienter* comports with subdivision 2 of section 15.15 of the Penal Law, which provides, *inter alia,* that "A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime of mental culpability". Additional support for our conclusion that the statute, as it then read, should be construed as requiring the element of *scienter* comes from comparing the former language to its present equivalent. The latter defines the class A-I felony of "attempted murder" as an attempt to commit "the A-I felony of murder in the first degree" (Penal Law, § 110.05, subd 1, as amd by L 1974, ch 367, § 3), while "murder in the first degree" is itself defined as requiring *scienter,* to wit: "A person is guilty of murder in the first degree when: 1. With the intent to cause the death of another person, he causes the death of such person; and * * * (i) the victim was a police officer * * * who was killed in the course of performing his official duties, and *the defendant knew or reasonably should have known that the victim was a police officer"* (Penal Law, § 125.27, added L 1974, ch 367, § 5; emphasis supplied). Interestingly, there is no discussion in the legislative memoranda accompanying the passage of chapter 367 of the Laws of 1974 of any intended change in the requisite culpable mental state (see, also, Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law, § 125.27, p 436). *United States v Feola* (420 US 671) is not authority to the contrary, as the issue before the United States Supreme Court in that case was the constitutionality of a Federal statute which, as interpreted, largely for a jurisdictional purpose, omitted from the definition of the crime of assaulting a Federal officer in the performance of his official duties (US Code, tit 18, § 111) any requirement that the assailant know or have reason to know that his victim or intended victim was an officer of the Federal Government. It is important for our purposes to note that the Supreme Court specifically found that the provision in question was *not* merely a Federal aggravated assault statute, and opined that were it to be considered as such "§ 111 would be read as requiring the same degree of [guilty] knowledge as its state-law counterparts" i.e., *scienter (United States v Feola, supra,* p 683; see, also, dissenting opn of Mr. Justice Stewart, p 711). Analogies to crimes such as rape in its varying degrees (Penal Law, art 130), where knowledge of the victim's age is *not* an element of the crime charged, are also inapposite. Subdivision 3 of section 15.20 of the Penal Law specifically declares that: "Notwithstanding the use of the term 'knowingly' in any provision of this chapter defining an offense in which the age of a child is an

element thereof, knowledge by the defendant of the age of such child is not an element of any such offense and it is not, unless expressly so provided, a defense to a prosecution therefor that the defendant did not know the age of the child or believed such age to be the same as or greater than that specified in the statute." (Cf. Penal Law, § 15.15, subd 2.) To recapitulate, in light of the fact that we now hold that knowledge of the victim's status was an element of the crime of attempted murder of a peace officer committed pursuant to subdivision 1 of section 110.05 of the Penal Law as it read at the time in issue, it follows *ex necessitate* that the trial court erred in refusing to so charge, and that the judgment of conviction must therefore be reversed and the case remanded for a new trial. On this analysis, it is unnecessary to reach the constitutional issue raised by defendant. Mollen, P. J., Rabin, Gulotta and Martuscello, JJ., concur.

