OPINION OF THE COURT
Charles J. Thomas, J.
Defendant moves, in an omnibus motion, for certain pretrial relief. The court has considered defendant’s moving papers, the People’s response, the minutes of the Grand Jury proceedings and the court file in this case and renders the following decision.
Defendant’s request for Sandoval relief as well as notice of instances of prior uncharged criminal vicious or immoral acts which the People have knowledge of and intend to use at trial is reserved for the trial court.
Defendant’s request for a bill of particulars and discovery are deemed demands pursuant to CPL 100.45, 200.95 and 240.20. The People are reminded of their obligation under Brady v Maryland (373 US 83).
Defendant’s motion to suppress physical evidence allegedly seized from defendant is granted to the extent that a Mapp hearing is ordered which shall be held prior to trial.
Defendant’s motion for a Huntley hearing is granted and shall be conducted prior to trial.
Defendant’s motion to suppress prospective identification testimony is granted to the extent of ordering a Wade hearing to be conducted prior to trial.
The court grants defendant’s motion to inspect and has read the Grand Jury minutes in camera. When viewed in the light most favorable to the People, the evidence adduced before the Grand Jury both direct and circumstantial was legally sufficient to establish the finding of counts 2 through 11 of the indictment (People v Deegan, 69 NY2d 976; People v Calbud, Inc., 49 NY2d 389). Moreover, the Assistant District Attorney correctly charged the Grand Jury with respect to the applicable law, and the proceeding before the Grand Jury was proper in all other respects as to those counts.
The first count, however, charges defendant with attempted murder in the first degree as follows: "The defendant, on or about September 11, 1994, being eighteen years old and more, with intent to cause the death of another person, to wit: Detective Michael Padilla, attempted to cause the death of such person, by means of shooting a firearm in the direction of *801 Detective Michael Padilla, and further the said Detective Michael Padilla was a police officer, who was in the course of performing his official duties, and the defendant knew or reasonably should have known that the said detective Michael Padilla was a police officer.”
The evidence presented before the Grand Jury established that at about 12:00 a.m. on the morning of September 11, 1994 Norma Gonzalez, a Transit Authority police officer, was at a family party for her grandmother. When she and her three children approached the elevator to leave the apartment building, she was stopped by three individuals who claimed to have had some kind of disagreement with her young son a short time earlier. The individuals said they were going to shoot them and began cursing. Ms. Gonzalez returned to the apartment and asked a relative to get her cousin, Michael Padilla, who is a detective for the New York City Police Department. Michael Padilla came out of the apartment to escort Ms. Gonzalez, her children and her boyfriend to her car. The three individuals continued to follow and threaten them as Ms. Gonzalez left the apartment building. When she reached her car she saw three other cousins arriving for the party. The three individuals continued their threats and began to threaten Ms. Gonzalez’s three cousins as well. One of the individuals, a taller male, wearing a dark colored shirt with white stripes approached within five feet of the car and threatened Ms. Gonzalez and her family with a two-by-four piece of wood.
The following testimony was then adduced from Ms. Gonzalez:
"[M]y cousin said, if you don’t leave, I am calling the police officer. If you don’t leave in two seconds I am gonna shoot you.
"q. Now, when you say that your cousin said that, are we speaking about Detective Padilla?
"a. Yes.
"q. How far was this young man from Detective Padilla? Did he say, I am a police officer when he said that?
"a. About from here to here, a feet — maybe five feet.
"q. Can you tell us do you know whether or not Detective Padilla actually had a weapon on him that night?
"a. He did not have a weapon on him that night.
"q. And once Detective Padilla stated, I am a police officer, what happened?
*802 "a. He put his hand in his pocket, made motion like he had a gun and the guy ran around the building.” (Transcript, at 11-12.)
"q. Describe to the Jury exactly what you saw at the same time you said you heard the shots fired, what did you see?
"a. First, I heard someone saying, hey those are cops over there. And then, group yelling, if you are cops show us what you have, show us your weapon. That is when we decided to go around the car, the group of kids was still in front of us * * *
"Michael turns to go make the phone call and at that point —oh before, we — when he turns that is when the shots are fired.” (Transcript, at 13.)
"q. Were you able to see the person who was holding the gun?
"a. No * * *
"q. Did the detective then go make a phone call to the Police?
"a. Yes.” (Transcript, at 14.)
The law is clear that there are two essential elements which distinguish this crime from attempted murder in the second degree. The first is that the police officer must be acting in the course of performing his official duties and secondly that defendant knew or reasonably should have known that the intended victim was a police officer. These elements reflect the Legislature’s intent to "increase the penalty for the attempted murder of a peace officer in the line of duty”, in an effort to counteract the "then-current spate of assassination attempts against uniformed officers acting in the line of duty [and the Legislature’s desire to] provide these officers with an extra measure of public support and protection by increasing the penalty for such attempts”. (People v Harris, 67 AD2d 665, 666, 667.)
Thus, in People v Davis (43 NY2d 17), the Court rejected the People’s contention that an officer for the Yonkers Police Department, who was in plain clothes on his way to report for duty trying to leave a grocery store, was acting in the line of duty when he was shot. In that case there was no question that the officer had identified himself as a police officer and that he was shot during a robbery.
Regarding the second element, the Court, in People v Flores (162 AD2d 464), held that there was sufficient evidence of *803 defendant’s scienter where the evidence established that "during the altercation Officer Mazone’s police shield was revealed, he announced 'Police’, and he drew his service revolver. Moreover, upon seeing the police shield, the officer testified that the defendant exclaimed, 'He’s a cop, pop him’ ” (supra, at 465).
Likewise, in People v Woods (141 AD2d 684), the evidence was sufficient where the defendant "pursued * * * [the] off-duty police officer who had moments before identified himself as such, and proceeded to fire a round of shots at him. The officer, in response, displayed his shield and, in his capacity as a police officer, began to fire back” (supra, at 685).
In this case, the evidence is deficient both as to the element that defendant was a police officer acting in his official capacity and secondly that defendant knew or reasonably should have known the same.
Here, the intended victim was off duty, in civilian clothes at a family gathering. At Ms. Gonzalez’s request Michael Padilla agreed to walk his cousin to her car. Knowing he was unarmed he left the apartment without calling for assistance and indeed did not call for police assistance until after the shots were fired. His actions in helping his cousin were no different from the actions which any civilian might have taken under the same circumstances.
The testimony is clear that defendant did not know of the detective’s status and Ms. Gonzalez’s testimony is consistent with that fact since the group yelled: "If you are cops, show us what you have, show us your weapon”. (Transcript, at 13.)
Whether defendant should reasonably have known that Michael Padilla was a police officer, the court notes that he was off duty, not in uniform, and did not display a shield or a service revolver. These acts have consistently been found to be the basis for determining that a defendant should have possessed the required knowledge.
In her testimony before the Grand Jury Ms. Gonzalez never affirmatively answered the Assistant District Attorney’s question, "Did he say, I am a police officer when he said that?” It was only the Assistant District Attorney’s statement as part of a subsequent question which assumed that the detective identified himself as a police officer.
Based upon the foregoing, the court finds that such evidence, even when viewed in the light most favorable to the People, fails to support the charges contained in the indict *804 ment and defendant’s motion to dismiss is granted solely as to count 1.
Defendant’s motion for release of the Grand Jury minutes is denied at this time. Grand Jury proceedings are secret and should not be disclosed absent a compelling and particularized need for access (CPL 190.25 [4]; Matter of District Attorney of Suffolk County, 58 NY2d 436; Ruggiero v Fahey, 103 AD2d 65). Defendant has failed to demonstrate such a need sufficient to overcome the presumption of necessity for confidentiality. Defendant may renew his motion at the appropriate time prior to trial.
Defendant’s motion for permission to file any further motions is granted to the extent that such motions are authorized by CPL 255.10.
The court has considered all other aspects of defendant’s motion and finds them to be without merit.