YOUNG MEN'S CHRISTIAN ASSOCIATION, Appellant-Respondent, *v.*
ROCHESTER PURE WATERS DISTRICT, Respondent-Appellant.

Fourth Department, April 11, 1974.

*Harris, Beach & Wilcox (J. William Ernstrom* of counsel),
for appellant-respondent.

*Branch, Van Voorhis & Wise (Sergeant W. Wise* of counsel),
for respondent-appellant.

*Nixon, Hargrave, Devans & Doyle* for University of Rochester,
*amicus curiae.*

MOULE, J. In this appeal we are called upon to determine
the validity of certain charges imposed by the Rochester Pure
Waters District upon the Young Men's Christian Association
for the removal of sewage and surface water runoff from its
downtown Rochester facility and whether the latter organiza-
tion, as a Type B not-for-profit corporation which is exempt
from real property taxes under section 421 (subd. 1, par. [a])
of the Real Property Tax Law, is liable for the payment of all
or any part of the charges so imposed.

The Rochester Pure Waters District (District) is a county sewer district established in 1971 by an order of the Monroe County Legislature and organized under the provisions of article 5-A of the County Law. It is located entirely within Monroe County and encompasses the City of Rochester and a small portion of the Town of Gates. In January, 1972 the District sent the Young Men's Christian Association (YMCA) a bill in the amount of $2,738.58 for services rendered between July 1 and October 15, 1971 in removing sewage and surface water runoff from property owned by the YMCA at 108–112 Gibbs Street in Rochester. The bill was broken down into two separate charges. One charge was in the amount of $1,827.98 and was termed a " combined sewage charge ". The other was in the amount of $910.60 and was termed a " sanitary sewage charge ". The " combined sewage charge " was calculated as a percentage of the assessed value of the YMCA's real property and was attributed to the amount of surface water runoff which the property produced. The " sanitary sewage charge " was calculated on the basis of the metered water consumption at the YMCA property and was attributed to the amount of waste water discharged.

The YMCA takes the position that the District's " combined sewage charge ", based upon assessed valuation, is no more than a disguised " special ad valorem levy ", as defined by subdivision 14 of section 102 of the Real Property Tax Law and that its " sanitary sewage charge ", based upon water consumption, is no more than a disguised " special assessment ", as defined by subdivision 15 of section 102 of the Real Property Tax Law and that as an organization exempt from property taxes under section 421 (subd. 1, par. [a]) of the Real Property Tax Law, it is only responsible, by virtue of subdivision 1 of section 490 of the Real Property Tax Law for paying the portion of such charges earmarked for the cost of establishing the district and is not responsible for paying the portion earmarked for the district's daily operation and maintenance expenses. On that basis, it made a payment of $1,930.54 on its bill but has refused to pay the balance of $808.04.

The District takes the position that section 266 (subd. 1, par. [a]) of the County Law authorizes it to establish a set of rates for its services, taking into account both capital costs and operation and maintenance, and impose those rates upon district residents in the nature of user charges which are not susceptible to characterization as either " special ad valorem levies " or " special assessments " and which may be levied in full against

all those benefited by the sewer system without regard to tax exempt status under section 421 of the Real Property Tax Law.

The YMCA instituted a special proceeding under article 78 of the CPLR seeking a declaration that the District was without jurisdiction to levy a charge upon it attributable to daily operation and maintenance and a summary judgment prohibiting the District from levying such charges upon it in the future. Special Term, properly treating this proceeding as an action for declaratory judgment (CPLR 103), dismissed the YMCA's petition and entered judgment in favor of the District. In so doing, it assumed that the charges imposed by the District were really a "special ad valorem levy" and a "special assessment" but held that the YMCA was not exempt therefrom because, as the court read subdivision 1 of section 490 of the Real Property Tax Law its property was not located outside of a city or village. This, we believe, was an incorrect reading of the statute but that question and its determination is not a part of the basis for our decision.

We have granted permission to the University of Rochester (University) to file an *amicus curiae* brief on this appeal. It is the University's position that the financing provisions of sections 270 and 271 of the County Law take precedence over those of section 266 and that the District has acted illegally in computing its charges under the latter section. It urges that, when the County Legislature created the District, it established two separate zones of assessment within it and thereby bound the District to levy its charges only in accordance with the exclusive provisions of section 270 of the County Law.

Article 5-A of the County Law provides a comprehensive scheme for the establishment, administration, operation and improvement of county water, sewer, drainage and refuse districts. The financing of such districts, under the statute, may be accomplished in accordance with either of two alternative procedures which it provides. Under one alternative, the cost of establishing, improving and operating the district may be funded under the provisions of sections 270 and 271 of the County Law. These sections are themselves alternatives. The former is applicable when it is determined that the expense of financing the district should be borne by its residents in proportion to the assessed valuation of their property and contemplates the imposition of a "special ad valorem levy" as that term is defined by subdivision 14 of section 102 of the Real Property Tax Law. The latter is applicable when it is determined that the expense of financing the district should be borne

by its residents in proportion to the amount of benefit each receives from its existence and contemplates the imposition of a " special assessment " under subdivision 15 of section 102 of the Real Property Tax Law.

The other alternative method of financing is provided by section 266 of the County Law. That section allows the administrative head of the district, with the confirmation of the county legislative body, to establish either a schedule of wholesale and retail rates or charges for services provided by the district to its residents or to impose a system of sewer rents as provided by article 14-F of the General Municipal Law. In its final sentence it specifically provides that the rates, rents or charges formulated in accordance with its provisions may be used to cover the cost of the district's operation and maintenance expenses and its debt service notwithstanding the provisions of sections 270 and 271. In 1965, paragraph (a) of subdivision 1 of section 266 was amended to make clear that the charges permitted under it could be allocated among areas within the district based upon various cost factors (see N. Y. Legis. Annual, 1965, pp. 231–233). The cost factors set forth as proper include " establishment of the district, the furnishing of improvements therein and operation and maintenance of district facilities or any combination thereof " (County Law, § 266, subd. 1, par. [a], as amd. by L. 1965, ch. 605).

Because of certain mandatory language appearing in sections 270 and 271, it may be argued that those sections take priority over section 266 and in some instances, if not in all, they provide the only means by which a special improvement district may be financed under the statutory scheme. If such an interpretation were followed, however, the provisions of section 266 would have to be ignored.

In construing conflicting provisions of a statute, it is proper to assume that the Legislature intended to produce a harmonious and workable system (*Public Serv. Comm. v. New York Cent. R. R. Co.*, 193 App. Div. 615). Where it is possible to do so, it is the duty of the courts to harmonize and reconcile laws and to adopt the construction of a statutory provision which harmonizes and reconciles it with another, such as that both may stand together (*Chamberlain v. Chamberlain*, 43 N. Y. 424). If by any fair construction, whether strict or liberal, a reasonable field of operation can be found for two possibly conflicting acts, that construction should be adopted (*Matter of Schulz v. Cermak*, 1 Misc 2d 1063; *People v. Sheehy*, 204 Misc. 281). Inconsistent or conflicting provisions in a statute are to be har-

monized to reach the real intent of the Legislature (*Matter of School Bd. of Brooklyn* v. *Board of Educ. of City of N. Y.,* 157 N. Y. 566).

Furthermore, the use of words such as " shall " or " must " in a statute does not always mean that its provisions are mandatory to the exclusion of others (*People ex rel. Lawton* v. *Snell,* 216 N. Y. 527; *Matter of Hennessy,* 164 N. Y. 393). The term " must " or " shall " will be interpreted in the sense of " may " where it is evident from the entire act that it was not intended to receive peremptory construction (*Matter of Skidmore Coll.* v. *Cline,* 58 Misc 2d 582; *Tosti* v. *Sbano,* 170 Misc. 828).

We believe that by expressly stating that section 266 charges could be used to finance a district's operation, maintenance and debt service notwithstanding the provisions of sections 270 and 271, and by amending section 266 to make clear that establishment and improvement were costs properly allocable among areas within the district, the Legislature was manifesting its intention, perhaps previously unclear, that section 266 provide a separate method of financing special improvement districts, independent of sections 270 and 271, under which all cost factors could be considered together, and assessed in the form of user charges which, unlike those imposable under sections 270 and 271, are not susceptible to characterization as either a " special ad valorem levy " or a " special assessment ". Properties ordinarily exempt from taxation or from portions of " ad valorem levies " or " special assessments " are not exempt from user charges and are liable in full for their payment (*Silkman* v. *Water Comr.,* 152 N. Y. 327; see, also, *Town Bd. of Town of Poughkeepsie* v. *City of Poughkeepsie,* 22 A D 2d 270).

In construing section 266 as we have, we are reconciling it with the provisions of sections 270 and 271 so that both may stand together. Section 266, as amended, is permissive and not mandatory in nature. It provides that district expenses " may " be financed through a system of rates, charges or rentals. Therefore, there is still room for a district, if it so chooses, to assess the cost of its establishment and operation under the procedures outlined by sections 270 and 271 and to thereby afford preferred taxpayers whatever partial exemption the Real Property Tax Law may provide them from " special ad valorem levies " and " special assessments ".

Furthermore, such a construction is consistent with the policy of the Legislature to curtail the number of exemptions from real property taxation which the law grants to preferred taxpayers, as expressed when sections of the Real Property Tax

Law were revised in 1971 (see L. 1971, ch. 414, § 1). As we view it, the cost of sewage disposal may properly be made chargeable upon all properties in a given area using the system. Organizations otherwise exempt from taxation are not exempt from paying municipal electric, gas or water bills, and we think sewage removal is a municipal service which may be fitted into the same category.

We go no further than to determine that section 266 of the County Law is a proper one on which to base a charge covering the entire cost of providing a special district service and that such a charge is by its nature a user charge and not a " special ad valorem levy " or " special assessment ". We express no opinion as to whether such a charge may nonetheless be characterized as a " service charge " under subdivision 13-a of section 102 of the Real Property Tax Law since that section of the law did not become effective until April 1, 1974. Nor do we pass upon the reasonableness of the method used by the District to compute the charges they have levied upon the YMCA. Subdivision 1 of section 266 of the County Law provides for the holding of public hearings before charges for service may be imposed under it and provides for a procedure whereby appeals from rate fixing determinations of the district administrative head must be taken to the county legislative body. Such an appeal has not been taken in this case so the reasonableness of the District's rates is not properly before this court (*Matter of Sardino* v. *Finch,* 35 A D 2d 686; *Matter of Buffalo Gen. Hosp.* v. *Sipprell,* 33 A D 2d 977).

The judgment should be affirmed.

MARSH, P. J., CARDAMONE, MAHONEY and DEL VECCHIO, JJ., concur.

Judgment unanimously affirmed without costs.