OPINION OF THE COURT
Matthew F. Coppola, J.
In these actions, which the court has previously joined for purposes of trial, the defendants move to dismiss the complaints. The plaintiffs cross-move for preanswer summary judgment.
In 1981, Westchester County resolved to establish a refuse disposal district pursuant to County Law article 5-A. In 1982, this proposal was approved by the electorate. Thereafter, the State Comptroller issued his authorization and an order establishing the district was duly recorded in 1982.
In 1985 the County Legislature authorized the county to enter into a disposal agreement with the Intercounty Solid Waste Cooperative, Inc. (Cooperative) pursuant to which Cooperative members (including the two Industrial plaintiffs) would obtain access to county refuse facilities subject to available capacity at rates of $17.92 or $21.92 per ton. However, in June of 1986, upon receiving an opinion from the New York State Attorney-General to the effect that this agreement violated antitrust laws, the county rescinded the agreement.
Pursuant to a request from the County Executive, the Board of Legislators adopted Act 34-1986 which provides in relevant part as follows:
"Sec. 2. a. As soon as practical, the head of County Refuse Disposal District No. 1 (the head of the Division of Solid Waste Management of the Department of Public Works) shall develop a recommended rate and terms of service for disposal of solid waste * * * Prior to the transmittal of such rate and terms of service to this Board, such head or his designee shall conduct a public hearing at such time and place selected by such head * * * At such hearing, oral and written comments upon the rates and terms of service shall be received. Matters not covered in this Act in respect to the public hearing shall be determined by the head of County Refuse Disposal District No. 1.
"Sec. 3. The following interim rate and terms of service *47 shall apply as of July 1, 1986 until a final rate and terms of service are established:
"a. The interim user fee to dispose of solid waste in the County Solid Waste Management System for waste collected within County Refuse Disposal District No. 1 which is not subject to disposal under an inter-municipal agreement with the County shall be the market rate per ton for disposal as determined by the head of County Refuse Disposal District No. j * * *
"c. The head of County Refuse Disposal District No. 1 shall develop and use an equitable system to provide to private carters on a short term basis available disposal capacity for solid waste collected within county Refuse Disposal District No. 1 that is not subject to disposal under an inter-municipal agreement with the County.” (Emphasis added.)
As a result thereof on June 23, 1986, Calvin E. Weber, Deputy Commissioner for Solid Wastes for the County of Westchester, unilaterally published a set of rules, regulations, procedures and an interim user fee. There had been no public hearing, and implementation of the rules, regulations, procedures and fees on July 1, 1986 was not preceded by any legislative confirmation. Moreover, the Weber rules provided that private carters would be issued permits for an unspecified and daily changing allocation of refuse disposal in the refuse district. If the county could not accept any of the refuse of the private carters, it was the carters’ obligation to "shed” the excess tonnage.
In their cross motion, the plaintiffs in Pelliccio (joined in with one exception by the Industrial Waste plaintiffs) seek declaratory and injunctive relief declaring sections 2, 3 and 5 of Act 34-1986 null and void, vacating the interim user fees and ordering a refund of all moneys collected thereunder, declaring Weber’s rules null and void, declaring that the county and/or district is required to collect, directly or by contract, all refuse generated within the county and forbidding the county from refusing to accept such refuse into its refuse disposal system for disposal at county expense, declaring the county’s ad valorem tax imposed pursuant to County Law § 270 null and void unless and until user charges are abandoned (the Industrial Refuse plaintiffs disagree on this point only as hereinafter discussed), and declaring that plaintiffs’ rights to due process and equal protection were violated by the county.
*48 The defendants move to dismiss the complaints, urging that the plaintiffs are without standing to bring the action, that the proceeding was not timely brought, that necessary parties have not been named and that the plaintiffs failed to file a notice of claim. The court finds defendants’ motion to be without merit.
The parties have standing inasmuch as their taxpayer status has been established. Moreover, the Industrial Refuse plaintiffs are directly affected by the legislative and administrative action herein attacked and it would be a perversion of justice to deny them access to this court.
Additionally, the proceeding is not untimely. It does not fall within the purview of County Law § 260, as the action sought to be annulled is not a "final determination or order made by the board of supervisors establishing the district or authorizing the increase and improvement of facilities” therefor. Consequently, the 30-day Statute of Limitations contained therein has no application to this action.
Also, the court rejects defendants’ assertion that necessary parties have not been named. This assertion is based on the court’s rejection of a preliminary injunction application wherein it was stated on the record that the court was concerned lest the rights of nonparties be adversely affected. However, the reference concerned the application for affirmative injunctive relief wherein the plaintiffs were seeking to require the county to absorb all county generated waste whether it was contractually obligated to do so or not. Since the finite capacity of the county system, which, parenthetically, is the practical genesis of these lawsuits, could not accept all waste not previously contracted for without requiring a shedding of refuse which the county had agreed by prior contract to take, it was the parties to these prior contracts for whom the court was concerned. However, the court’s language was intended to convey the equitable considerations underlying its rejection of the extraordinary temporary relief sought. It was not designed to convey any idea that the ultimate relief sought by plaintiffs could not be granted within the context of the existing parties. In any event, this particular issue has been mooted as will hereinafter appear.
Finally, as regards the motion to dismiss, there is no necessity in this action primarily seeking injunctive and declaratory relief, for plaintiffs to have filed a notice of claim. Reliance on Mills v County of Monroe (59 NY2d 307) is *49 misplaced. While it is true that the Mills case held that a suit alleging violation of Federal rights is not immune to State notice of claim requirements, there is no need to file a notice of claim where the suit seeks to vindicate a public interest. It is clear that this is such a suit. Consequently, plaintiffs’ claim pursuant to 42 USC §§ 1983 and 1988, wherein they seek attorney’s fees for violation of constitutional rights, is not subject to the notice of claim prerequisite.
The court now turns to the substantive issues raised by the cross motion for summary judgment.
Plaintiffs attack the propriety of the county’s delegation to Commissioner Weber of the right to determine interim user fees and to determine hearing procedures. Their argument is based on County Law § 266 which states in relevant part as follows: "1. Subject to confirmation by the board of supervisors, the administrative head or body: (a) may establish, from time to time * * * a scale of charges for the collection, conveyance, treatment and disposal of sewage * * * or refuse from, public corporations, improvement districts, commercial and industrial users and individuals to be determined on any equitable basis including but not limited to a system of classification which, for purposes of establishing differential rates, charges or rentals, may allocate among areas within the district designated by the administrative head or body, the costs of establishment of the district, the furnishing of improvements therein and operation and maintenance of district facilities or any combination thereof * * * Before any such schedules are finally established, the administrative head or body shall hold at least one public hearing thereon. Appeals may be taken from any rate fixing determination of the administrative head or body to the board of supervisors. The board of supervisors shall prescribe the manner of holding such hearings and of taking appeals. The administrative head or body shall also adopt rules and regulations, subject to approval of the board of supervisors, prescribing the terms and conditions under which service will be given to consumers, including the manner of paying bills for service, penalties for non-payment, discounts, deposits and other related matters.”
In Long Is. Liquid Waste Assn. v Cass (107 AD2d 666-667) the Appellate Division, Second Department, explicitly held that a delegation such as the one made by the county to Commissioner Weber is illegal. The court mandated strict adherence to the statute’s procedural scheme:
*50 "Plaintiffs claim that the schedule of charges for disposal of scavenger wastes adopted by defendants is void because it was never confirmed or approved by the Suffolk County Legislature. They rely upon subdivision 1 of section 266 of the County Law of New York State, which states in pertinent part: 'Subject to confirmation by the board of supervisors, the administrative head or body: (a) may establish * * * a scale of charges for the collection, conveyance, treatment and disposal of sewage, waste-water or refuse’. (The role of the 'board of supervisors’ in Suffolk County is filled by the Suffolk County Legislature [County Law, § 150-a, subd 2; § 278].)
"There can be no question that the language '[s]ubject to confirmation’ is mandatory and that sewage disposal rates set by the Commissioner do not become effective until the county legislature has ratified ('confirmed’) them. Local Law No. 1 of 1972 (art III, §4, subd 2) of Suffolk County states that the Commissioner 'is hereby authorized to establish fees for scavenger waste permits’ (emphasis added). This merely bestows upon the Commissioner the power to adopt rates, which was envisaged by the aforesaid provision of the County Law. It does not purport to confer upon the Commissioner the power granted to the county legislature to confirm these rates once they are 'established’. In any event, such a delegation of power to an administrative head, specifically vested by State law in the county legislative branch, would be invalid (Municipal Home Rule Law, § 10, subd 1; Consolidated Edison Co. v Town of Red Hook, 60 NY2d 99, 107; Matter of Bovino v Scott, 22 NY2d 214). The rate schedules, therefore, never met the State law prerequisites for confirmation.”
The county seeks to avoid application of the Long Is. Liquid Waste case (supra) by urging that the situation being faced at the time delegation was made to Weber was an emergency. There is case law supporting the proposition that an emergency will justify suspension of statutorily mandated procedure (see, North Riv. Elec. Light & Power Co. v City of New York, 48 App Div 14; Brooklyn City R. R. Co. v Whalen, 191 App Div 737, affd 229 NY 570). Obviously, the term "emergency” cannot be used lightly but must signify an extraordinary event requiring extraordinary measures.
In the case at bar, considering the procedural posture of this case, it would be premature and unwarranted to make a factual finding regarding the county’s emergency claim. This issue requires a trial. However, the court notes the difficult burden faced by the county. Although it would be unfair to *51 require the county to come forward with its proof on this "on-the-law” preanswer summary judgment motion, the facts underlying the county’s actions, as so far disclosed to the court, do not make out an emergency which would allow for suspension of the statutory procedural scheme.
Plaintiffs also attack the amount of the interim user fees and, clearly, if that remains in issue after determination of Weber’s authority to impose them, it must be the subject of a trial.
In their memorandum of law, plaintiffs claim that the rules established by Weber violate County Law article 5-A. The underlying argument advanced in support is that it is the county’s obligation to transport and dispose of county-generated refuse. For reasons hereinafter discussed, the court disagrees with plaintiffs’ position on this point. Parenthetically, the court notes that the United States Attorney has taken the position that prior Federal District Court litigation was resolved by imposition of this very obligation on the county. However, the United States Attorney’s position was advanced by letter to the court, the United States Attorney does not represent a party to this action, the material presented by him does not support the claim advanced by him and the issue is not before this court in this action.
The opinion of Justice Hopkins in Matter of Sperry Rand v Town of N. Hempstead (29 AD2d 968) relied upon by plaintiffs in support of their novel theory does not support that theory, it is inapposite both on procedural and substantive grounds. The opinion is a concurring opinion which agrees with the result reached by Special Term but disagrees with the reasoning advanced by Special Term. The Court of Appeals subsequently affirmed upon the opinion at Special Term (23 NY2d 666). Consequently, it is apparent that the Court of Appeals adopted the analysis of the case advanced by Justice Albert at Special Term.
A reading of the Sperry Rand case (supra) reveals that the disagreement may have been more a result of misunderstanding rather than a differing view of the law. Town Law § 198 (9) (b) dealing with collection expenses after creation of a town garbage district provides for the establishment of user fees which "may be based upon the volume of refuse, garbage, ashes, rubbish and other waste matter collected, making a proper allowance for commercial or industrial establishments, the number of calls per month, the number of persons * * * *52 or upon any other equitable basis”. Based upon this language, Justice Albert held that "Under this statute, it may be that the Town Board had the right to assess the expense on an ad valorem, basis. However, it could not at the same time restrict the benefit to petitioner to the point where it is, in effect, nonexistent.” (53 Misc 2d 970, 973.) In sum, it appears that Justice Albert was recognizing the theoretical possibility that an ad valorem levy could equitably mirror the factors to be considered in determining a user fee. In Justice Hopkins’ opinion, he stated that the statute has no provision for imposition of an ad valorem tax to pay for collection expenses. However, it may very well be that Justice Albert was not suggesting the existence of the town’s authority to impose an ad valorem tax per se but only that equitable user fees could be determined on an ad valorem basis. In any event, the obvious practical difficulty of achieving an equitable user rate on an ad valorem basis renders any argument moot and of no more than semantic interest.
Of more importance from the substantive standpoint is counsel’s reliance on the following language from Justice Hopkins’ concurring opinion: "After the district is established, the town board may either provide for the collection of garbage and refuse or may contract for such collection”. (Matter of Sperry Rand v Town of N. Hempstead, 29 AD2d 968, 969, supra.) It is plaintiffs’ position that this language constitutes a determination that a concomitant to establishment of a garbage district is a mandatory obligation to collect and dispose of all garbage generated in the district. However, this was neither the meaning of the language nor the intendment of the underlying statute.
Preliminarily, it should be noted that even if the Hopkins’ opinion meant what counsel attributes to it, it would be inapplicable to this case. Justice Hopkins was merely paraphrasing Town Law § 198 (9) (a). That statute has no application to this case and there is no identical language in the County Law. Although the brief submitted on behalf of plaintiffs alludes to "virtually identical language”, the court does not find any determinative language therein to be virtually identical.
Of more interest is the fact that the use of the Town Law for analogy defeats plaintiffs’ position. For that statute specifically provides that the obligation of the garbage district is not all encompassing: "After a refuse and garbage district shall have been established * * * the town board may, (a) Provide *53 for the collection and/or resource recovery or disposition”. (Town Law § 198 [9].) Obviously, then, the Town Law rejects the notion that creation of a district obligates that institution to collect and dispose of all garbage within the district, for it phrases any duty in the permissive alternative.
Having stated that the Town Law is inapplicable hereto, the court must nevertheless point out that that statute’s language is a usable reference for exploring the traditional functions of municipalities with regard to garbage. Unless there is an express statutory mandate to the contrary, a municipality does not have an obligation to furnish municipal services for the disposal of garbage or refuse. (7 McQuillin, Municipal Corporations §24.242 [3d ed].) “It is for the municipality, within reasonable bounds, to determine how [garbage and waste products] shall be collected and removed, or rendered harmless.” (City of Rochester v Gutberlett, 211 NY 309, 316.) Its duty is “to exercise such supervision and control as will prevent danger to public health and injury to the public interest.” (P. & A. Carting Co. v City of New York, 7 Misc 2d 815, 817.) As stated by Mr. Justice Eager of this court, in Leroy Franz, Inc. v City of New Rochelle (124 NYS2d 525, 527): “The removal by a municipality of garbage, ashes and other refuse is a voluntary service. The duty of removing the same is primarily that of the property owners. The municipality may require the owners and occupants of premises to care for and remove all of the same, or it may restrict the quantity that it will remove from premises, making it the responsibility of the owners and occupants to care for the surplus, if any.” As to the specific issue in the case, Justice Eager held as follows: “a limitation of the amount of garbage, ashes, refuse, etc., which the municipality will collect in behalf of the owners, occupants or persons in charge of commercial, office and industrial buildings, would not, in the opinion of the court, be invalid merely because there was a further provision for the collection of all the garbage, etc., from residences and apartments, irrespective of the quantity * * * Classification in legislation is not forbidden. The law merely requires that legislation shall apply equally to all persons similarly situated * * * [as long as] the classification is not arbitrary or unreasonable. [Citing cases.]” (124 NYS2d, at p 528.) The reasoning of the Franz decision, echoing as it does the common-law view of a municipality’s obligation with respect to garbage, finds voice in many other jurisdictions (see, e.g., Terenzio v Devlin, 361 Pa 602, 65 A2d 374; Alexander v Detroit, 392 Mich 30, 219 *54 NW2d 41; Szczurek v City of Park Ridge, 97 Ill App 3d 649, 422 NE2d 907).
Despite the pervasive traditional view of the municipality’s obligation with respect to garbage collection and disposal, plaintiffs would read into the County Law a mandate that the county receive all garbage, however, and from whomever generated within the garbage district. They deduce this from County Law § 250 (5) which defines the purpose of a refuse district as being "the collection and disposition of garbage” and section 266 (1) which authorizes the establishment of a "scale of charges for the collection, conveyance, treatment and disposal of * * * refuse.” However, these phrases, while creating authority for the county garbage district’s permitted endeavors, do not by their words require the County Legislature to perform those functions which municipalities never were required to perform. The inference which plaintiffs seek this court to make would be an obvious violation of the meaning intended by the lawmakers. There can be no doubt that County Law article 5-A was meant to aid the individual municipalities in their traditional obligations and not to add to their burdens.
Plaintiffs in the Pelliccio action claim that the imposition of the ad valorem tax is illegal because the county has imposed user fees. Plaintiffs in the Industrial Refuse action claim that the user fees are illegal because the county has imposed an ad valorem tax. If the court agreed with the supposition underlying the common thread of the two arguments, that article 5-A permits either an ad valorem tax, or user fees, but not both, then logic dictates that the ad valorem tax would remain, since it chronologically preceded the adoption of user fees. However, the court does not agree with plaintiffs’ argument on this point.
Ignoring for this discussion the previously treated question regarding the questionable procedure used by the county in adopting user fees, the court notes that the exact question presented here has been treated by the State Comptroller. The court adopts the analysis of the Comptroller, the relevant parts of which are reproduced herein:
"County Law Article 5-A provides for the establishment of a county refuse district. Section 270 provides that the cost of establishing and maintaining the district may be assessed by means of special ad valorem assessments. Section 270 goes on to authorize a county district, which is established on an ad *55 valorem basis, concurrently to establish zones of assessment within such district and to assess the costs of such district against such zones. In addition, § 271 authorizes a county, when it creates such a district, to elect to assess the costs of establishing and operating such district on a benefit basis.
"Both the provisions of § 270, dealing with the creation of zones of assessment, and of § 271, authorizing the use of a benefit formula, however, seem to require that such a scheme be elected when the district is created. There is no authority for a district, which has elected to utilize ad valorem levies, subsequently to establish zones of assessment or switch to a benefit formula. Accordingly, it may not do so.
"While the district may not switch to either zones of assessment or a benefit basis, it may, pursuant to County Law § 266, with the approval of the county board, establish user charges to be charged to users of the refuse disposal services. Such charges may, it appears, be instituted at any time by the district and may be used to meet the costs of both establishing and operating the district * * *
"A county refuse district established on an ad valorem basis may not subsequently be changed to a benefit basis, and zones of assessment may not thereafter be established, although the district may establish user charges to pay both debt service and operation and maintenance costs.” (1976 Opns St Comp No. 76-386, pp 56-57; emphasis added.)
The only authority cited to the contrary is Young Men’s Christian Assn. v Rochester Pure Waters Dist. (44 AD2d 219, affd 37 NY2d 371). However, the language relied on therein is obiter. Moreover, the discussion in that case concerning alternative methods of financing does not say that the alternative methods are mutually exclusive. Counsel’s reading of exclusivity into such language is purely gratuitous and unwarranted.
Finally, the question of plaintiffs’ entitlement to attorney’s fees pursuant to 42 USC §§ 1983 and 1988 must necessarily await determination at trial along with the other issues not disposed of on the law.
In sum, the defendants’ motion to dismiss is denied. With regard to the plaintiffs’ motion for summary judgment, the court makes the following determinations.
Neither the County of Westchester nor the refuse disposal district is required to collect or accept for disposal all refuse generated within either the county or the district.
*56 The ad valorem tax and user fees are not mutually exclusive and both may be imposed.
Procedures mandated by County Law §266 were violated and a trial will be had to determine whether in fact an emergency existed such as to justify suspension of statutory requirements.
Except as above indicated, the motion for summary judgment is denied.