SALVATORE PELLICCIO et al., Appellants-Respondents, v DAVID AXELROD, as Commissioner of Health of the State of New York, Respondent, and ANDREW P. O'ROURKE, as Westchester County Executive, et al., Respondents-Appellants. (Action No. 1.)

INDUSTRIAL REFUSE SYSTEMS, INC., et al., Appellants-Respondents, v ANDREW P. O'ROURKE, as Westchester County Executive, et al., Respondents-Appellants. (Action No. 2.)

Second Department, June 15, 1987

## APPEARANCES OF COUNSEL

*Lovett & Gould (Jonathan Lovett* of counsel), for appellants-respondents in action No. 1.

*Mariano & Wolman (William Mariano* of counsel), for appellants-respondents in action No. 2.

*Henry J. Logan, County Attorney (Kenneth E. Powell* of counsel), for respondents-appellants in actions Nos. 1 and 2.

## OPINION OF THE COURT

WEINSTEIN, J.

The instant appeal calls upon us to resolve a challenge to the rules and regulations governing solid refuse disposal in Westchester County. The respective plaintiffs who assert standing as taxpayers and private carters, directly attack the enabling legislation (Local Laws, 1986, No. 34 of County of Westchester)* as an unlawful delegation of authority in contravention of County Law § 266 and seek a judgment declaring invalid the financing mechanism devised thereunder.

For many years, the Croton Sanitary Landfill located at Croton Point in the Village of Croton-on-Hudson provided the only site within Westchester County for the disposal of solid waste by its municipalities. The useful life of the facility was limited and it was estimated that it would reach capacity by December 1985. Prior thereto, a complaint had been filed by the United States Attorney for the Southern District of New York alleging that the county was violating Federal law by permitting refuse and leachate containing deleterious substances, to enter the Hudson River. As a result of the Federal suit, the Croton Sanitary Landfill was ordered closed by 1985. That deadline was later extended to June 30, 1986, on which date the county actually closed the site.

In anticipation of this closure, the County Board of Legislators passed a resolution authorizing the construction of a solid waste disposal, resource recovery and electric generating facility (hereinafter the facility) at Charles Point in Peekskill (Resolution No. 28-1979). To insure that the facility's financing and operation would be feasible, in 1979 the county entered

---

* It bears noting that subsequent to the date on which this appeal was argued, the County Board of Legislators adopted Local Laws, 1987, No. 8 of the County of Westchester, which essentially affirmed the interim fee and terms of service established under Local Laws, 1986, No. 34 of the County of Westchester. The 1987 law was implemented retroactively to July 1, 1986.

into intermunicipal agreements with 35 municipalities located within the county, whereby the county agreed to accept and dispose of a certain maximum tonnage of municipally collected solid waste at the facility and the municipalities agreed to deliver certain percentages of the refuse they collected. The agreements set a maximum tipping fee of $17 per ton through 1989. These agreements contemplated the establishment of a refuse disposal district and the collection of ad valorem taxes in order to subsidize the cost of operating the facility. In Resolution No. 227-1981, the Board of Legislators authorized the creation of the Westchester Refuse Disposal District No. 1 (hereinafter the district) and the imposition of ad valorem taxes.

Operation of the facility commenced in 1984. It was soon discovered that the facility had the capacity to process approximately 100,000 more tons of refuse per year than the municipalities were providing pursuant to the intermunicipal agreements. Thus, the county began negotiating with private carters to permit them access to the facility. By Local Laws, 1985, No. 31 of the County of Westchester, the Board of Legislators authorized the county to enter an agreement with the Intercounty Solid Waste Cooperative, Inc., a group of private carters, to permit them to utilize the facility to dispose of the solid waste they collected. Although the agreement was never formally approved by the county, the parties began performing under it as though it had been fully authorized.

In the interim, the New York State Attorney-General reviewed the proposed agreement, and indicated that there were problems with its anticompetitive nature. For almost a year, the Attorney-General endeavored to persuade the county to discontinue operating under the proposed agreements. These efforts proved fruitless. Consequently, the Attorney-General suggested, by letter dated June 9, 1986, that the county voluntarily abandon the agreement immediately and impose market value tipping fees on all private carters using the facility and the county transfer stations, and advised that failure to do so would result in the commencement of litigation against the county and the district.

In response, the Board of Legislators adopted Local Laws, 1986, No. 34 of the County of Westchester, which repealed Local Laws, 1985, No. 31 of the County of Westchester, and gave the administrative head of the district, the defendant Calvin Weber, the authority to develop a recommended rate and term of service for the disposal of solid waste which was

not collected by municipalities and to enter into short-term agreements with private carters until such time as the Board of Legislators approved a recommended rate and term of service. The tipping fee imposed under these short-term agreements was to be established by Weber at the market rate per ton. The agreements devised by Weber, which were to be effective from July 1, 1986 through August 31, 1986, set the interim tipping fee at $43.75 per ton.

Subsequently, two separate actions were commenced, *inter alia,* for judgments declaring Local Laws, 1986, No. 34 of the County of Westchester, and the agreements promulgated thereunder null and void. By order and judgment dated December 4, 1986, the Supreme Court, *inter alia,* determined both actions. The order and judgment denied the county defendants' motions to dismiss, and, upon the plaintiffs' cross motions for summary judgment, searched the record and awarded the county defendants partial summary judgment and declared that neither the defendant County of Westchester nor the district is required to collect or accept for disposal all refuse generated within the county or the district, and that the determination to impose and collect both ad valorem taxes and user fees to finance the operations of the district is lawful (134 Misc 2d 45). The plaintiffs now appeal and the county defendants cross-appeal from stated portions of that order and judgment.

■ The court did not err in rejecting the county defendants' argument in their motions to dismiss that the plaintiffs lacked standing to maintain these actions. The plaintiffs in action No. 1, Pelliccio and Frank, are trustees of a carpenters' apprentice fund which owns a building and rents land within the district and which hires a private carter to collect and dispose of its solid waste. Under a lease, the fund pays real estate taxes on the property it rents, which apparently include both an ad valorem tax and a user fee imposed to finance the operations of the district. Inasmuch as abuse of the procedural safeguards contained in County Law article 5-A may cause the fund injury by way of increased carting fees and the fund is within the zone of interest sought to be protected by those safeguards, the fund has standing to maintain this action *(see, Matter of District Attorney of Suffolk County,* 58 NY2d 436; *Glen Head—Glenwood Landing Civic Council v Town of Oyster Bay,* 88 AD2d 484). The plaintiffs in action No. 2, Industrial Refuse Systems, Inc., and Nello Carting Corp., are private carters whose business is directly affected by the rules

and regulations governing solid refuse disposal in Westchester County. Thus, they clearly have standing to assert the subject claims.

■ Turning to the merits, the court did not err in declaring that the county and the district are not required to collect or accept for disposal all refuse generated within the county and the district. We note initially that the district was created for the purpose of solid waste disposal, not collection, and nothing in County Law article 5-A requires a county which creates a special district for solid waste disposal to also create a district for the purpose of solid waste collection. Nor does that article provide that a county which creates a refuse disposal district must be responsible for the disposal of all the refuse generated within that district. On the contrary, when the district was established it was clearly understood that it was being created only for the benefit of those whose refuse was collected by municipalities.

The court's declaration that the county and the district may impose and collect both an ad valorem tax and user fees in order to finance the district was also correct. County Law § 266 provides a means of financing a special district through a system of rates, charges and rentals to be used alone or in conjunction with the means of financing authorized under County Law § 270 (an ad valorem tax) or County Law § 271 (a special assessment). Nothing contained in either that section or in County Law article 5-A indicates otherwise.

We find, however, that the court did err in ordering a trial on the issue of whether or not an emergency existed to justify the suspension of the statutory requirements of County Law § 266 inasmuch as the requirements of County Law § 266 are not applicable to the actions complained of here.

County Law § 266 (1) permits the administrative head of a refuse district, subject to confirmation by the Board of Supervisors, in this case the County Board of Legislators (County Law § 150-a), to establish a scale of charges for the disposal of refuse, commonly referred to as a user fee. It also requires that at least one public hearing be held by the administrative head before any such schedule is finally established, with the manner of holding the hearing to be prescribed by the Board of Legislators. The remaining subdivisions pertain to the enforcement of the fees charged under subdivision (1). Pursuant thereto, unpaid charges and rents become a "lien upon the real property upon which or in connection with which

services were provided" (County Law § 266 [2]). In this sense, County Law § 266 is inapplicable to the instant case inasmuch as unpaid charges could not become a lien on either (1) the property of the persons who employed the private carters, since the fee is not owed by them, or (2) any real property owned by the carters, since that is not the real property in connection with which the services were provided.

According to the plaintiffs, since Local Laws, 1986, No. 34 of the County of Westchester does not provide for confirmation by the Board of Legislators of the interim rates established by Weber, the administrative head of the district, the Board's delegation of authority was improper and the interim user rates imposed are null and void. Moreover, they assert that the procedural requirements of County Law § 266 (1) with regard to the holding of a public hearing prior to the imposition of any rates and the Board's responsibility for prescribing the manner in which such hearing should be conducted were not met prior to the imposition of the rates.

It bears noting, however, that after describing the manner in which user fees are to be established, County Law § 266 (1) goes on to provide that if a refuse district has a capacity in excess of its needs, the administrative head or body may contract for the use of such facilities by municipalities, a district or persons outside the county district. In the instant case, since there is an excess of capacity within the disposal district, i.e., the facility is capable of treating more waste than is collected by the municipalities within the district, County Law § 266 (1) gives Weber the authority to contract for the use of those facilities by persons other than those who pay taxes or user fees in order to dispose of their refuse. Inasmuch as the private carters did not contract in the capacity of owners of parcels benefited by the creation of the refuse disposal district, they qualified as "persons outside the county district" within the meaning of the subdivision. From a reading of County Law § 266, it is clear that the contractual rate charged private carters for the use of disposal facilities of a refuse district, which are in excess of the district's own needs, does not qualify as a user fee. Thus, the county defendants herein were not required to comply with the procedural mandates of County Law § 266 (1), and their failure to do so does not render Local Laws, 1986, No. 34 of the County of Westchester invalid. If the plaintiffs believe that the interim rate determined by Weber does not represent the market rate for disposal at the facility, their recourse is to address their

grievances to the County Board of Legislators *(see, Young Men's Christian Assn. v Rochester Pure Waters Dist.,* 37 NY2d 371, 375).

Since the plaintiffs are not the prevailing parties in these actions, they are not entitled to attorneys' fees under 42 USC § 1988 *(see, Hanrahan v Hampton,* 446 US 754, *reh denied* 448 US 913), and their causes of action for attorneys' fees should be dismissed.

For the foregoing reasons, the order and judgment under review should be modified by deleting the fourth, fifth and sixth decretal paragraphs thereof, and substituting therefor provisions (1) denying the plaintiffs' cross motion for summary judgment in their entireties and (2) upon searching the record, declaring that the respondents-appellants did not violate County Law § 266, and otherwise dismissing the actions, including the causes of action to recover attorneys' fees pursuant to 42 USC §§ 1983 and 1988, and, as so modified, the order and judgment should be affirmed insofar as appealed from.

BRACKEN, J. P., RUBIN and HARWOOD, JJ., concur.

Ordered that the order and judgment is modified, on the law, by deleting the fourth, fifth and sixth decretal paragraphs thereof, and substituting therefor provisions (1) denying the plaintiffs' cross motions for summary judgment in their entireties, and (2) upon searching the record, declaring that the respondents-appellants did not violate County Law § 266, and otherwise dismissing the actions, including the causes of action to recover attorneys' fees pursuant to 42 USC §§ 1983 and 1988; as so modified, the order and judgment is affirmed insofar as appealed from, with one bill of costs payable to the respondents-appellants by the appellants-respondents appearing separately and filing separate briefs.