OPINION OF THE COURT
Fuchsberg, J.
At issue is the appropriateness of the exercise of a court’s discretion to allow the appellant, the District Attorney of Suffolk County, to utilize Grand Jury minutes in aid of a civil suit his county’s legislature authorized. The discretion was exercised under the umbrella of CPL 190.25 (subd 4), which, while articulating the secrecy which is to govern *440 Grand Jury proceedings, does permit disclosure “upon written order of the court”.[1]
The minutes are those of Suffolk County’s February 1980 Grand Jury III. It was one of several successive and overlapping Grand Juries impaneled to investigate possible fraud and political corruption in the ongoing construction of the county’s Southwest Sewer District No. 3, a major public work.
The respondents include businessmen and political figures who, along with certain construction and engineering firms, played significant roles in the planning and execution of the project. Three individual respondents testified before Grand Jury III. Others, though subpoenaed, were excused after refusing to waive immunity. Still others supplied records to one or more of the Grand Juries. Unquestioned is it that all were subjects of the inquiry conducted by Grand Jury III. Most pertinent to this case, though, as authorized by CPL 190.85, that body issued a critical report deploring relationships between public officials and private interests, and though the three respondents who testified were indicted for perjury because of the nature of their testimony,[2] in the end no substantive indictments on the subject matter of the inquiry were returned.
Against this background, on January 27, 1981 Suffolk’s County Legislature, at the District Attorney’s urgent request that it do so posthaste, adopted emergency legislation authorizing him to commence a civil suit against the respondents for damages allegedly resulting from the conduct explored within the confines of the Grand Jury.[3] *441 Lodged that very day in the United States District Court for the Eastern District of New York, its legal theory was premised on the so-called “RICO” statute (Racketeer Influenced and Corrupt Organizations Act, US Code, tit 18, § 1961 et seq.).[4]
Also before the day was out, the District Attorney secured an ex parte order granting him blanket approval to employ the Grand Jury III minutes in the contemplated civil litigation. Supporting this application in essence was no more than his assistant’s conclusorily worded statement that the “transcripts are required and necessary in the interests of justice” to take “the profit out of kickbacks and payoffs and bribery”. No attempt was made to describe, much less to detail, any of the conduct so labeled or to isolate the pertinent portions of the transcripts “required”. This nonspecificity was matched by the order which, issued by a Suffolk County Court Judge, broadly and unqualifiedly provided that “the District Attorney of Suffolk County, his appointed staff, special counsel, experts and consultants be authorized and permitted to utilize, the Grand Jury transcripts * * * in the * * * civil proceeding”.
When, in due course, the respondents moved to vacate this order, the issuing Judge, taking cognizance of the District Attorney’s challenge to the movants’ standing, refused to recognize that any one other than those who actually had testified before Grand Jury III had a right to attack the order. He thereupon modified his earlier ruling so as to stay disclosure pending the outcome of the perjury trials. On review, the Appellate Division, in its turn, ruled *442 that all the respondents, so long as they were targets of, or witnesses at, the inquiry, had standing. Thus reaching the merits, it went on to find that the District Attorney had failed to make a sufficient showing to warrant lifting the veil of secrecy.
On his appeal to this court, the District Attorney, by way of threshold argument, repeats his contention that the respondents lacked standing to challenge the County Court’s order. To this he adds that, in any event, because parts of the minutes had been revealed in the course of intervening litigation,[5] the matter is now moot. Substantively, he also insists that the Appellate Division applied erroneous standards in its evaluation of the application. Ignored in the process, he complains, was what he terms prosecutorial “intra-office disclosure rights” and the fact that the civil case in which the District Attorney here was planning to exploit the minutes was one brought on behalf of a public agency. For the reasons which follow, in our view all of these points are without merit.
Treating at the outset with the question of standing, the contemporary rule is that a party has standing to enforce a statutory right if its abuse will cause him injury and it may fall within the “zone of interest” protected by the legislation (Fritz v Huntington Hosp., 39 NY2d 339, 346). As we have had occasion to observe in recent years, “[ojnly where there is a clear legislative intent negating review * * * or lack of injury in fact * * * will standing be denied” (Matter of Dairylea Coop. v Walkley, 38 NY2d 6, 11).
In the present case, it is not open to question that one of the goals advanced by the time-honored Grand Jury secrecy principle is the “protection of an innocent accused from unfounded accusations if in fact no indictment is returned” (People v Di Napoli, 27 NY2d 229, 235). The *443 implementation of this principle renders it essential that one threatened with stigmatization by unwarranted disclosure be accorded an opportunity to enforce the confidentiality it is designed to secure (see Douglas Oil Co. v Petrol Stops Northwest, 441 US 211, 218, n 8; cf. Matter of Hynes v Karassik, 47 NY2d 659).
These considerations in mind, it is at once clear that the rule of secrecy applies equally to either one who gives evidence or to one concerning whom evidence is given. Since all the respondents, as targets, were at least in the second category, the three who did not testify because they would not waive immunity -do not lack standing on this account. Nor, the scope of the rule not being limited to a witness’ own testimony, did those whose testimony allegedly was perjurious or, for that matter, has since been so found, thereby forfeit what otherwise was their legitimate interest in maintaining the confidentiality of any other accusations leveled against them.
Equally unpersuasive is appellant’s suggestion that, because some Grand Jury testimony entered the public domain some time after the original disclosure order was issued, the appeal has become moot. The short answer, without more, is that, while we may not be able to restore such secrecy as has been lost, we can curb any further disclosure of unpublished parts or further dissemination of those already circulated. The availability of this remedy forecloses dismissal for mootness (Gilpin v Mutual Life Ins. Co. of N. Y., 299 NY 253, 261-262; see 10 Carmody-Wait 2d, NY Prac, § 70:298).
Turning then to the substantive side of the case, we begin by noting that secrecy has been an integral feature of Grand Jury proceedings since well before the founding of our Nation (Pittsburgh Plate Glass Co. v United States, 360 US 395, 399; see Calkins, Grand Jury Secrecy, 63 Mich L Rev 455; Comment, Secrecy in Grand Jury Proceedings, 38 Ford L Rev 307).[6] The reasons it has survived go beyond our afore-mentioned concern that the reputations of those *444 investigated by or appearing before a Grand Jury be protected from unfounded accusations. Thus, in more recent times, we have observed that confidentiality also serves the important objectives of ensuring the independence of Grand Juries, preventing the flight of the accused and encouraging free disclosure of information by those summoned before it (People v Di Napoli, supra, at p 235).
Nevertheless, the rule of secrecy is not absolute and, in the discretion of the trial court, disclosure may be directed when, after a balancing of a public interest in disclosure against the one favoring secrecy, the former outweighs the latter (People v Di Napoli, supra). But since disclosure is “the exception rather than the rule”, one seeking disclosure first must demonstrate a compelling and particularized need for access (Pitler, NY Crim Prac under the GPL, § 5.7, p 236). However, just any demonstration will not suffice. For it and the countervailing policy ground it reflects must be strong enough to overcome the presumption of confidentiality. In short, without the initial showing of a compelling and particularized need, the question of discretion need not be reached, for then there simply would be no policies to balance.
Without contesting the validity of this rule, the District Attorney nonetheless counters with the contention that it is applicable only when private, rather than public, litigants seek Grand Jury materials. But the cases brook no such distinction. This was well illustrated when the City of Buffalo sought access to minutes of a Grand Jury investigation into a “no-show” job scandal involving municipal employees (Matter of City of Buffalo [Cosgrove], 57 AD2d 47). The occasion was the proposed pursuit of civil litigation to recoup improperly disbursed public funds. Despite the public interest at stake, absent a showing “that sources other than the Grand Jury minutes are inadequate to provide the information which the city seeks”, Grand Jury secrecy was held paramount (id., at p 51; accord Matter of Carey [Fischer], 68 AD2d 220; Matter of Corporation Counsel of City of Buffalo [Cosgrove], 61 AD2d 32).
Off center too is the District Attorney’s further theory that a standard of mere “relevance” should be applicable to what the District Attorney urges us to regard as a mere *445 “intra-office transfer of Grand Jury minutes for civil purposes within a prosecutor’s office”. In reaching for such a rule, he looks to subdivision (e) of rule 6 of the Federal Rules of Criminal Procedure (in US Code, tit 18, Appendix), which permits liberal transfer of such material among “attorney[s] for the government”. A fundamental difficulty with this approach, however, is that New York has no comparable statutory scheme (Matter of Heisler v Hynes, 42 NY2d 250, 254). To add to its inaptness as authority, the majority of the Federal circuits which have considered the issue apply the rule only when criminal matters are involved. In civil litigation, these courts hold governmental entities to the compelling and particularized need standard. (Compare Matter of Grand Jury Investigation No. 78-184, 642 F2d 1184, 1190, cert granted sub nom. United States v Sells Eng., 456 US 960; Matter of Grand Jury Investigation of Cuisinarts, Inc., 665 F2d 24; Matter of State of Illinois, 659 F2d 800, cert granted sub nom. Illinois v Abbott Assoc., 455 US 1015, with Matter of Grand Jury Subpoenas, 581 F2d 1103, 1110.)
Indeed, as was candidly conceded on oral argument, the circumstance that a District Attorney, in discharging his criminal justice enforcement responsibilities, has a special relation to a Grand Jury (see People v Di Falco, 44 NY2d 482, 486-487) is irrelevant. So his designation to represent the county in the prosecution of its RICO claims accorded him no greater rights than would accrue to any other attorneys retained by the county for this purpose.
Measured then by the compelling and particularized standard we restate today, the District Attorney’s presentation to the County Court must be found wanting. True, a public interest is to be found in the county’s efforts to recover civil damages from those who allegedly defrauded its taxpayers. But, absent was anything to indicate that the Grand Jury minutes were essential to the pursuit of this interest.
Specifically, for instance, nothing was offered to explain why the liberal discovery devices available under the Federal Rules of Civil Procedure would not suffice (cf. Matter of Zinna [Rensselaer County Grand Jury], 63 AD2d 800, 801). Since information so gathered might obviate the need to *446 compromise Grand Jury confidentiality, this was not an insignificant deficiency.
And, concomitantly, there was a shortfall too in identifying what made it impossible for the District Attorney to establish his case without resort to the minutes. Without being provided with such particularization, nisi prius, of course, was hardly in a position to appraise the application intelligently and an appellate court was left with nothing more than the occasion to say so. Perhaps worst of all, the conclusory generalizations to which the application was confined left the court without any rationale by which it could minimize any invasion of secrecy by narrowing it to the essential (cf. Matter of Scotti, 53 AD2d 282, 289). Instead, the court was confronted with a choice between an uninformed wholesale grant or none at all.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Meyer and Simons concur.
Order affirmed.

. CPL 190.25 (subd 4) provides: “Grand jury proceedings are secret, and no grand juror, other person [authorized to be present] * * * may, except in the lawful discharge of his duties or upon written order of the court, disclose the nature or substance of any grand jury testimony, or * * * other matter attending a grand jury proceeding”.

. Subsequently, one indictment was dismissed on the People’s motion. The other two were disposed of by guilty pleas, one to the counts charged and one to lesser misdemeanor charges.

. The local law later was declared an unconstitutional delegation of jurisdiction to the District Attorney (Davis Constr. Corp. v County of Suffolk, 112 Misc 2d 652 [Wager, J.]). Appeal from this determination is still pending in the Appellate Division, Second *441 Department. Thus, neither the circumstances surrounding the passage of the local legislation nor its substance is before us.

. The RICO suit, which had been in preparation well before its legislative authorization, was in the charge of two of the District Attorney’s assistants, who, following their supervision of the Grand Jury investigation, were sworn in, anticipatorily, as Special Assistant County Attorneys so that, with the aid of at least one outside consultant, they could work up the civil suit. Later, the same assistants were to be cross-designated as Assistant Attorneys-General (while, compensatingly, two Assistant Attorneys-General were designated as Assistant District Attorneys), so the former could represent the State too when it was decided to have it intervene in the RICO case.
For an extended discussion of the civil use of the RICO statute as such see Comment, Civil RICO: The Temptation and Impropriety of Judicial Restriction (95 Harv L Rev 1101).

. Appellant advises us that, in the course of another Federal criminal trial, several witnesses repeated the substance of their Grand Jury III testimony, and that, in response to a subpoena duces tecum served during the course of that trial, “certain portions” of the Grand Jury transcripts were supplied to the defendants. While this is all dehors the record and it is therefore not possible for us to accurately gauge the extent of the disclosure, in essence there appears to be no disagreement that not all of the evidence before the Grand Jury was made public.

. The policy of secrecy continues to be so strong into the present day that unauthorized disclosure is a felony in this State (Penal Law, § 215.70; compare 4 Blackstone’s Commentaries, p 126).