In separate proceedings to unseal and release grand jury minutes and evidence based on CPL 190.25 (4) (a), Letitia James, as Public Advocate for the City of New York, the Legal Aid Society, the New York Civil Liberties Union, and the Staten Island Branch of the National Association for the Advancement of Colored People and the New York State Conference of Branches of the National Association for the Advancement of Colored People separately appeal, as limited by their respective briefs, from so much of an order of the Supreme Court, Richmond County (Garnett, J.), dated March 19, 2015, as denied each of their respective petitions.
Ordered that the order is affirmed insofar as appealed from, without costs or disbursements.
These appeals arise out of the death of Eric Garner on July 17, 2014, and a grand jury’s decision not to return an indictment against the target or targets of its investigation. After impaneling a grand jury to hear evidence concerning the circumstances of Garner’s death, the District Attorney of Rich *1033 xnond County (hereinafter the District Attorney), based on CPL 190.25 (4) (a), petitioned the Supreme Court, and was granted permission, to disclose to the public limited information regarding the nature and scope of the grand jury proceedings. The District Attorney did not seek, at that time, the disclosure of any grand jury testimony or exhibits. The Supreme Court permitted disclosure regarding the period of time during which the grand jury sat, the number and types of witnesses who testified, and the number and types of exhibits admitted into evidence. The Supreme Court also disclosed the relevant principles of law on which the grand jurors were instructed, and that the grand jury, in conformity with CPL 190.60 and 190.75, voted to file its findings of dismissal. Rather than quelling public debate about the grand jury proceedings, the limited disclosure instead engendered a call for full disclosure of the minutes of the grand jury’s proceedings, and the exhibits and instructions provided to the grand jury.
These appeals involve the subsequent petitions filed by Letitia James, as Public Advocate for the City of New York (hereinafter the Public Advocate), the Legal Aid Society, the New York Civil Liberties Union, and the Staten Island Branch of the National Association for the Advancement of Colored People and the New York State Conference of Branches of the National Association for the Advancement of Colored People (hereinafter together the N.A.A.C.P. petitioners), based upon CPL 190.25 (4) (a), to unseal and release the grand jury minutes to themselves and to the general public, including transcripts of testimony, exhibits, information about certain grand jurors, and legal instructions. Each of these petitioners seeks disclosure for the purpose of understanding the grand jury’s decision to not return an indictment, promoting transparency in the grand jury process, restoring confidence in the criminal justice system, and engaging in meaningful discussions about reform of the grand jury process and police practices. Certain petitioners proposed limiting the scope of the materials disclosed to the public and redacting any names of, and identifying information about, the witnesses and grand jurors. In the order appealed from dated March 19, 2015, the Supreme Court denied the petitions on the grounds that each of the petitioners failed to establish a “compelling and particularized” need for disclosure and, in any event, the public interest in preserving grand jury secrecy outweighed the public interest in disclosure.
Preliminarily, we note that the disclosure issues raised by the District Attorney in the initial proceeding were different *1034 than the issues presented by the current petitions. Accordingly, the determination made in the District Attorney’s initial proceeding does not control the instant proceedings (see Ryan v New York Tel. Co., 62 NY2d 494, 500-501 [1984]). Moreover, the partial disclosure ordered by Justice Rooney in that proceeding does not, in and of itself, open the door to the disclosure of additional grand jury testimony, exhibits, and information (see Matter of Carey, 45 Misc 3d 187 [Sup Ct, Wyoming County 2014]).
We reject the District Attorney’s contention that the subject order is nonappealable. The order appealed from is civil, rather than criminal, in nature, “for although it relates to a criminal [investigation], it does not affect the criminal [investigation] itself, but only a collateral aspect of it,” namely, the unsealing and release of the grand jury minutes (Matter of Hynes v Karassik, 47 NY2d 659, 661 n 1 [1979]; see People v M.E., 121 AD3d 157, 159 [2014]; People v Anonymous, 7 AD3d 309, 310 [2004]; People v Purley, 297 AD2d 499, 501 [2002]).
However, the Public Advocate lacks capacity to maintain a proceeding based on CPL 190.25 (4) (a). The issue of legal capacity “requires an inquiry into the litigant’s status, i.e. its ‘power to appear and bring its grievance before the court’ ” (Wells Fargo Bank Minn., N.A. v Mastropaolo, 42 AD3d 239, 242 [2007], quoting Community Bd. 7 of Borough of Manhattan v Schaffer, 84 NY2d 148, 155 [1994]). The authority of the Public Advocate is expressly limited to that set forth in the New York City Charter. Section 24 (f) (4) of the New York City Charter, which enables the Public Advocate, in essence, to oversee city agencies, perform related investigations, and attempt to resolve individual complaints concerning city services, does not extend to allegations of conduct that may constitute a crime. In fact, the Public Advocate is required to forward complaints alleging potential criminal conduct to the New York City Department of Investigation or the appropriate prosecuting attorney or other law enforcement agency (see NY City Charter § 24 [k]). The Public Advocate’s authority is otherwise limited to her intra-city services and agency oversight, which specifically does not include oversight of constitutionally established offices such as county district attorneys and the courts (see NY Const art XIII; NY City Charter § 24 [f] [4]; People v Ianniello, 21 NY2d 418, 424 [1968]). We note that no provision of the City Charter expressly authorizes the Public Advocate to commence litigation. Although the First Department has held that section 24 (j) of the City Charter impliedly confers upon the Public Advocate the capacity to bring a *1035 proceeding under CPLR article 78 to compel a city agency to comply with the Public Advocate’s request for records and documents (see Matter of Green v Safir, 255 AD2d 107 [1998]), that holding is inapplicable here. The Public Advocate’s capacity to bring the instant proceeding cannot be derived by “necessary implication” from her oversight and investigatory responsibilities as set forth in the City Charter (see Community Bd. 7 of Borough of Manhattan v Schaffer, 84 NY2d at 159). To the extent that section 24 (j) of the New York City Charter authorizes the Public Advocate to be provided with timely access to records and documents of city agencies as necessary to complete her investigations, the grand jury records at issue are not generated by city agencies, and her authority is limited to investigations required of her by the Charter. Further, to the extent our concurring colleague relies upon the definition of “agency” contained in New York City Charter § 1150 (2) to suggest that the Public Advocate may engage in the oversight of and obtain records from any public entity that is paid in whole or in part from the City’s treasury, such a general definition must yield to the more specific language of New York City Charter § 24 (f) and (k), which exempts courts and district attorneys from the Public Advocate’s oversight. “Whenever there is a general and a particular provision in the same statute, the general does not overrule the particular but applies only where the particular enactment is inapplicable” (McKinney’s Cons Laws of NY, Book 1, Statutes § 238). Therefore, despite the general language in New York City Charter § 1150 defining the term “agency,” the specific proscriptive language of the Public Advocate’s functions, as defined in New York City Charter § 24, cannot be construed as intending to confer upon the Public Advocate any authority to civilly review, oversee, or investigate district attorneys’ offices in the substantive performance of their criminal law-related prosecutorial responsibilities. Accordingly, rather than reaching the merits of the Public Advocate’s petition, the Supreme Court should have denied it on the ground of lack of capacity.
Unlike the Public Advocate, the purpose and capacity of the remaining appellants (hereinafter collectively the appellants) is not expressly limited by the City Charter or other statutory or decisional authorities. The District Attorney’s contention that the appellants lacked “standing” to seek disclosure because they are not among the individuals and agencies specifically enumerated in CPL 160.50 (1) (d) is without merit. While it is true that none of the appellants falls within the six statutory exceptions to the sealing provision under CPL 160.50 (1) (d), that statute is inapplicable to the extent that the appellants *1036 are seeking disclosure based on CPL 190.25 (4) (a). Indeed, courts have routinely considered requests for disclosure based on CPL 190.25 (4) (a) by individuals and agencies other than those specifically enumerated in CPL 160.50 (1) (d) (see e.g. People v Di Napoli, 27 NY2d 229 [1970]; Matter of Quinn [Guion], 293 NY 787 [1944]; Matter of Aiani v Donovan, 98 AD3d 972 [2012]; Roberson v City of New York, 163 AD2d 291 [1990]; People v Lindsay, 188 Misc 2d 757 [Cattaraugus County Ct 2001]; People v Cipolla, 184 Misc 2d 880 [Rensselaer County Ct 2000]; Matter of FOJP Serv. Corp., 119 Misc 2d 287 [Sup Ct, NY County 1983]). In any event, the list of parties permitted to seek the unsealing of records under CPL 160.50 (1) (d) has been expanded in “extraordinary circumstances” (Matter of New York State Commn. on Jud. Conduct v Rubenstein, 23 NY3d 570, 581 [2014] [internal quotation marks omitted]; Matter of New York State Police v Charles Q., 192 AD2d 142, 145 [1993] [internal quotation marks omitted]), upon a showing of a “compelling demonstration” (Matter of New York State Police v Charles Q., 192 AD2d at 145 [internal quotation marks omitted]) that disclosure was necessary, which is synonymous with the burden under CPL 190.25 (4) (a).
Turning to the merits, “ ‘[t]he primary function of the Grand Jury in our system is to investigate crimes and determine whether sufficient evidence exists to accuse a citizen of a crime and subject him or her to criminal prosecution’ ” (People v Burch, 108 AD3d 679, 680 [2013], quoting People v Calbud, Inc., 49 NY2d 389, 394 [1980]). “Grand jury proceedings are secret, and no grand juror, or other person specified in subdivision three of this section or section 215.70 of the penal law, may, except in the lawful discharge of his duties or upon written order of the court, disclose the nature or substance of any grand jury testimony, evidence, or any decision, result or other matter attending a grand jury proceeding” (CPL 190.25 [4] [a]). New York case law recognizing the sanctity of grand jury secrecy dates as far back as the year 1825 (see Ex parte Tayloe, 5 Cow 39 [1825]), and the predecessor statute of CPL 190.25 dates back from at least 1881 (see Code Crim Proc §§ 256, 257, 258). So strong are the principles of grand jury secrecy and the policies underlying it that unauthorized disclosure of grand jury evidence is a felony in New York (see Penal Law § 215.70). While “secrecy of grand jury minutes is not absolute” (People v Di Napoli, 27 NY2d at 234; see Matter of District Attorney of Suffolk County, 58 NY2d 436, 443 [1983]; Roberson v City of New York, 163 AD2d at 291), “a presumption of confidentiality attaches to the record of Grand Jury proceedings” (People v Fetcho, 91 NY2d 765, 769 [1998]).
*1037 The legal standard that must initially be applied to petitions seeking the disclosure of grand jury materials is whether the party seeking disclosure can establish a “compelling and particularized need” for access to them (People v Robinson, 98 NY2d 755, 756 [2002]; see Matter of District Attorney of Suffolk County, 58 NY2d at 444; Matter of Police Commr. of City of N.Y. v Victor W., 37 AD3d 722 [2007]). Only if the compelling and particularized need threshold is met must the court then balance various factors to determine whether the public interest in the secrecy of the grand jury is outweighed by the public interest in disclosure (see People v Robinson, 98 NY2d at 756; Matter of Lungen v Kane, 88 NY2d 861, 862-863 [1996]; Matter of District Attorney of Suffolk County, 58 NY2d at 443-444; People v Di Napoli, 27 NY2d at 234-235; Matter of Aiani v Donovan, 98 AD3d at 973-974; Matter of Police Commr. of City of N.Y. v Victor W., 37 AD3d 722 [2007]). The decision as to whether to permit disclosure is committed to the trial court’s discretion (see People v Di Napoli, 27 NY2d at 234; People v Eun Sil Jang, 17 AD3d 693, 694 [2005]). However, “without the initial showing of a compelling and particularized need, the question of discretion need not be reached, for then there simply would be no policies to balance” (Matter of District Attorney of Suffolk County, 58 NY2d at 444).
A party seeking disclosure will not satisfy the compelling and particularized need threshold simply by asserting, or even showing, that a public interest is involved. The party must, by a factual presentation, demonstrate why, and to what extent, the party requires the minutes of a particular grand jury proceeding “to advance the actions or measures taken, or proposed (e.g., legal action, administrative inquiry or legislative investigation), to insure that the public interest has been, or will be, served” (Matter of District Attorney of Suffolk County, 86 AD2d 294, 299 [1982], affd 58 NY2d 436 [1983]). “[I]f the supposed societal benefit of maximizing the public’s awareness could by itself trump all other considerations,” there would not exist a “legal presumption against disclosure of grand jury evidence, let alone a rule providing that such presumption may be overcome only by a showing of a particularized and compelling need for disclosure” (Matter of Carey, 45 Misc 3d at 213). Significantly, courts that have permitted disclosure of grand jury evidence have uniformly done so for some purpose other than generalized public interest and dissemination (see People v Di Napoli, 27 NY2d 229 [1970]; Matter of Quinn [Guion], 293 NY 787 [1944]; Matter of Aiani v Donovan, 98 AD3d at 973-974; Matter of Scotti, 53 AD2d 282 [1976]; People v Werfel, 82 Misc 2d 1029 [Sup Ct, Queens County 1975]; cf. People v Cipolla, 184 Misc 2d 880 [2000]).
*1038 Despite the intense public interest in this case, which this Court recognizes, the Supreme Court properly determined that the appellants’ reasons do not constitute a compelling and particularized need for disclosure of the requested grand jury materials (see Matter of District Attorney of Suffolk County, 58 NY2d 436 [1983]; Matter of Police Commr. of City of N.Y. v Victor W., 37 AD3d at 722; Matter of Hynes [Patrolmen’s Benevolent Assn.], 179 AD2d 760 [1992]; Ruggiero v Fahey, 103 AD2d 65 [1984]; Matter of Carey [Fischer], 68 AD2d 220 [1979]; Matter of Carey, 45 Misc 3d 187 [2014]; Matter of NYP Holdings, 196 Misc 2d 708 [Sup Ct, Kings County 2003]; Matter of Grand Jury Investigation, 139 Misc 2d 282 [Sup Ct, Bronx County 1988]; Matter of Third Extraordinary Special Grand Jury, Convened Pursuant To Exec. Orders Nos. 42 & 43 of 1976, 118 Misc 2d 93 [Sup Ct, Onondaga County 1983]).
While many of the foregoing decisional authorities could be discussed in detail as controlling precedent, the Matter of Hynes case merits particular note. Matter of Hynes arose out of a well-publicized and highly charged incident in 1991 in Crown Heights, Brooklyn, when a vehicle struck and killed a seven-year-old child. A grand jury declined to indict the driver for any crime, which added considerably to community unrest over the incident. The District Attorney of Kings County sought to release the grand jury’s minutes and records to quell the unrest, and to restore confidence in the grand jury system generally and in his office specifically (see Matter of Hynes [Patrolmen’s Benevolent Assn.], 179 AD2d at 760). This Court upheld the Supreme Court’s denial of the requested disclosure, finding that curbing community unrest and restoring faith in courts and prosecutors did not represent a compelling and particularized need, as is necessary to overcome the presumption of confidentially attached to grand jury proceedings (see id. at 760-761). The similarities between the circumstances of Matter of Hynes and those presented here are striking. Although the target of the grand jury proceedings in Matter of Hynes was a civilian, and the targets here are public servants, we find that distinction to be without a difference to the resolution of this case.
In addition, the appellants have failed to demonstrate that relevant information cannot be obtained from sources other than the grand jury minutes to permit lawmakers to fashion legislation, if appropriate, concerning reform of the grand jury process and police practices (see Matter of District Attorney of Suffolk County, 58 NY2d at 444-445; Matter of Third Extraordinary Special Grand Jury, Convened Pursuant To Exec. Orders *1039 Nos. 42 & 43 of 1976, 118 Misc 2d at 97). These sources may include, but are not necessarily limited to, reports and records of news media, and the City’s Department of Investigation, Civilian Complaint Review Board, Police Department, and Law Department. The appellants’ argument that there is a compelling and particularized need for disclosing the grand jury materials in order to help shape legislative debate at the State Capitol for potential grand jury reform is unpersuasive. The appellants failed to establish how or in what manner these grand jury materials would inform legislative debate beyond the facts that are already publicly known of the case, and beyond reform proposals that are already being discussed on their own merits.
The Supreme Court also properly determined that the Legal Aid Society failed to demonstrate a compelling and particularized need for access to the grand jury minutes for the purpose of ensuring better representation of its current and future clients. The Legal Aid Society did not indicate with any degree of specificity how the minutes or exhibits in this isolated case are necessary to that effort (see Ruggiero v Fahey, 103 AD2d at 70; Matter of District Attorney of Suffolk County, 86 AD2d at 299; Matter of Grand Jury Investigation, 139 Misc 2d at 285).
Moreover, contrary to the appellants’ contentions, the instructions given to the grand jury are entitled to a presumption of confidentiality, since CPL 190.25 (4) affords protection to all “matter attending a grand jury proceeding” (CPL 190.25 [4] [a]), including records that were not even entered into evidence before the grand jury (see Matter of Aiani v Donovan, 98 AD3d at 973). Similarly, there is no support for the conclusory contention of the Legal Aid Society and the N.A.A.C.P. petitioners that noncivilian witnesses, namely, police officers and emergency medical technicians, have no expectation of privacy in their grand jury testimony, or that they are not entitled to the same legal protections as civilian witnesses (see Melendez v City of New York, 109 AD2d 13, 22-23 [1985]). Accordingly, the appellants failed to show a compelling and particularized need for disclosure.
Although the appellants failed to make the requisite initial showing, because of the importance of this matter, this Court will reach the issue of whether “the public’s right to know overrides such factors as the chilling effect disclosure might have on future Grand Jury investigations of this nature” (Matter of Hynes [Patrolmen’s Benevolent Assn.], 179 AD2d at 761). The Supreme Court properly determined that the public interest in disclosure was outweighed by the dangers inherent in violating *1040 the secrecy of the grand jury proceeding (see Ruggiero v Fahey, 103 AD2d at 71-72; Matter of Carey, 45 Misc 3d at 209; Matter of Grand Jury Investigation, 139 Misc 2d 282 [1988]).
The most frequently mentioned purposes or rationales for preserving grand jury secrecy include: “(1) prevention of flight by a defendant who is about to be indicted; (2) protection of the grand jurors from interference from those under investigation; (3) prevention of subornation of perjury and tampering with prospective witnesses at the trial to be held as a result of any indictment the grand jury returns; (4) protection of an innocent accused from unfounded accusations if in fact no indictment is returned; and (5) assurance to prospective witnesses that their testimony will be kept secret so that they will be willing to testify freely” (People v Di Napoli, 27 NY2d at 235; see People v Seymour, 255 AD2d 866, 867 [1998]; Ruggiero v Fahey, 103 AD2d at 67-68). It is true that most of the factors enumerated in People v Di Napoli (27 NY2d at 235) are not implicated here in light of the fact that the grand jury declined to return an indictment, and that the identities of the target, as well as of certain witnesses who testified before the grand jury, are already publicly known. However, ensuring the independence of the grand jury, preventing the very real or potential danger that disclosure might present to the physical safety of the grand jurors and witnesses, and protecting them from public scrutiny and criticism, all militate in favor of maintaining grand jury secrecy.
Indeed, if pre-indictment proceedings were made public, especially in high profile cases such as this, “[f]ear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties” (Douglas Oil Co. of Cal. v Petrol Stops Northwest, 441 US 211, 222 [1979]; see United States v Sells Engineering, Inc., 463 US 418, 424 [1983]; Butterworth v Smith, 494 US 624, 636-637 [1990, Scalia, J., concurring]). We note that in this particular instance, there is reportedly an ongoing federal investigation into the circumstances of the death of Eric Garner, and the disclosure of grand jury minutes here could negatively interfere with the investigative efforts of the United States Department of Justice and the willingness of witnesses to cooperate with those efforts.
Although the appellants suggest that redacting certain information will cure the impact of disclosure on the grand jury witnesses and jurors by narrowing the scope of certain materials disclosed to the public, under the circumstances of this case, redactions would not serve the purpose of preserving the wit *1041 nesses’ anonymity and thereby protect them from public criticism and scrutiny (see Matter of Carey [Fischer], 68 AD2d at 228). Indeed, the earlier widespread dissemination of two videos capturing the incident would facilitate efforts by the media and the public to identify the source of any testimony disclosed.
The parties’ remaining contentions either are without merit or have been rendered academic in light of our determination.
Accordingly, the Supreme Court properly denied the petitions submitted by the appellants to unseal and release grand jury minutes and evidence based on CPL 190.25 (4) (a), and properly denied the petition submitted by the Public Advocate, but should have done so on the ground of lack of capacity to maintain this proceeding. Dillon, J.P., Austin and Sgroi, JJ., concur.